# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **ANNA GILL,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **ALIGN TECHNOLOGY INC.**, a California corporation, | |
| *Defendant,* | |

## CLASS ACTION COMPLAINT

Plaintiff Anna Gill ("Plaintiff Gill" or "Gill") brings this Class Action Complaint and Demand for Jury Trial against Defendant Align Technology Inc. d/b/a Invisalign ("Defendant Invisalign" or "Invisalign") to stop the Defendant from violating the Telephone Consumer Protection Act by making telemarketing calls after the consumer specifically opted out of receiving any more phone communications from Invisalign. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Anna Gill is a resident of Waukesha, Wisconsin.

2. Defendant Invisalign is a California registered corporation headquartered in San Jose, California. Defendant Invisalign conducts business throughout this District, Wisconsin, and the U.S.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction and venue is proper since the wrongful conduct giving rise to this case was directed by Defendant to and received by Plaintiff in this District.

**INTRODUCTION**

5. As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10. According to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in March, 2021, at a rate of 147.6 million per day. www.robocallindex.com (last visited May 6, 2021).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Invisalign is a d/b/a of Align Technology Inc.[3] [4]

15. Invisalign sells teeth aligners to consumers.[5]

16. Defendant gives consumers the option to learn more about Invisalign by answering a few questions on the Invisalign website to see if they are a good candidate for Invisalign's services.

[image of Invisalign smile assessment webpage][6]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.aligntech.com/
[4] https://www.linkedin.com/company/align-technology/
[5] https://www.invisalign.com/
[6] https://www.invisalign.com/get-started/smile-assessment

17. The consumer is then prompted to provide personal details, including a phone number so they can receive information from Defendant by email and potentially by phone as well:

> I agree to receive information about Invisalign treatment from Align Technology, Inc. by email, which may contain special offers, information on local providers, and requests for feedback about my experience. I also consent to Align contacting me by phone and/or text solely for the purposes of assisting me in finding an Invisalign provider and scheduling an appointment. Your personal data will be processed in accordance with our Privacy Statement.
>
> **Get Your Results** [7]

18. According to Invisalign's Privacy Statement in the "Marketing and Do Not Contact" section:

*Marketing and Do Not Contact*

*We may send you information about us from time to time if you have given us your consent (where required).*

*Align provides you the opportunity to request to stop receiving electronic communications from either Align or our partners by withdrawing your consent. If you do not want to receive communications from us, please tell us when we collect your information or write us at any time remove@aligntech.com and make sure to include your country location. You may also use the convenient unsubscribe feature included with emails. Please allow us enough time to process your request.*

*Keep in mind, this withdrawal of consent does not apply to necessary communications, such as responding to an inquiry, and is revoked if you later request information from us, for example, if you sign up to receive news alerts from us.*

19. Based on the Plaintiff's experience, after she opted out of receiving Invisalign emails, Invisalign immediately text messaged her to see if they could schedule her to visit an Invisalign provider. Once the Plaintiff opted out of receiving those text messages, Invisalign then called her to see if they could schedule her to visit an Invisalign provider.

---

[7] *Id.*

3
Class Action Complaint

20. On information and belief, Invisalign has a policy and procedure for contacting consumers to promote Invisalign's products specifically in response to requests from consumers to not be contacted.

21. In response, Plaintiff brings this case seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act by failing to maintain adequate policies and procedures for maintaining and honoring do not contact requests, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF GILL'S ALLEGATIONS

22. Plaintiff Gill registered her phone number on the DNC on April 27, 2010.

23. Plaintiff's phone number is not associated with a business and is used for personal use only.

24. In December 2020 or January 2021, Plaintiff requested information on the Invisalign.com website to learn more about Invisalign's services.

25. Plaintiff received a number of emails from Invisalign.

26. On April 29, 2021, Plaintiff unsubscribed from receiving emails from Invisalign, as she was no longer interested in Invisalign's services.

27. At 10:35 AM on April 29, 2021, *after* opting-out from the emails, Plaintiff received a text message from Invisalign from the phone number 888-882-5446 soliciting the Plaintiff to schedule a visit with an Invisalign provider to obtain Invisalign products.

28. Invisalign's text message provided "Reply STOP to Opt out."

29. Plaintiff immediately replied STOP so she could opt-out of further communications from Invisalign and even received a confirmation text message confirming her opt out.



30. In response to her opt-out, Invisalign called the Plaintiff on April 29, 2021 from the phone number 262-384-4621:



31. Plaintiff answered this call and the Invisalign employee began by introducing the company and said she was calling to book an appointment for the Plaintiff with an experienced Invisalign provider.

32. Plaintiff told the employee that she was surprised to receive such a call after opting-out both by email and text from further communications.

33. On information and belief, including the investigation of counsel, Invisalign has a policy of contacting consumers specifically in response to opt out requests to promote Invisalign's prodiucts.

34. The solicitation text and call that Plaintiff received from Invisalign have harmed Plaintiff Gill in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

35. Seeking redress for these injuries, Plaintiff Gill, on behalf of herself and a Class of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

36. Plaintiff Gill brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant texted or called more than once on their residential telephone line (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff.

37. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons

whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Gill anticipates the need to amend the Class definitions following appropriate discovery.

38. **Typicality and Numerosity**: Plaintiff is a member of the Class who received calls as part of the same telemarketing campaign as other Class members, and on information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

39. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

40. **Adequate Representation**: Plaintiff Gill will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Gill has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Gill and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Gill nor her counsel have any interest adverse to the Class.

41. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as

wholes, not on facts or law applicable only to Plaintiff Gill. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Gill and the Class)**

42. Plaintiff repeats and realleges paragraphs 1-41 of this Complaint and incorporates them by reference herein.

43. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made

will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

44. Defendant placed calls to Plaintiff and members of the Class on behalf of the Defendant without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

45. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

46. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gill individually and on behalf of the Class, prays for the following relief:

47. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Gill as the representative of the Class; and appointing her attorneys as Class Counsel;

48. An award of actual and/or statutory damages and costs;

49. An order declaring that Defendant's actions, as set out above, violate the TCPA;

50. An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

51. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Gill requests a jury trial.

DATED this 20th day of May, 2021.

**ANNA GILL**, individually and on behalf of all others similarly situated,

*/s/ Stefan Coleman*
Stefan Coleman (FL Bar no. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Counsel for Plaintiff and the putative Class*