# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANNA GILL,

        Plaintiff,

v.

ALIGN TECHNOLOGY INC,

        Defendant.

Case No. 21-CV-631-JPS

**ORDER**

This case comes before the Court on Defendant Align Technology, Inc. ("Align")'s motion to dismiss Plaintiff's first amended complaint, which alleges a violation of the Telephone Consumer Protection Act (the "TCPA"). ECF Nos. 10, 16. For the reasons explained below, the Court will deny the motion.

**1.    RELEVANT FACTS**

In December 2020 or January 2021, Plaintiff visited the Invisalign website, www.invisalign.com (the "Website") to learn more about Invisalign's orthodontal products and services. Plaintiff voluntarily answered a few questions to determine if Invisalign would be a good option for her. As part of this quiz, she provided her email address and phone number, and agreed to "receive information about Invisalign from Align" and consented to Align contacting her "solely for the purposes of assisting . . . in finding an Invisalign provider and scheduling an appointment." ECF No. 10 ¶ 17. Plaintiff requested some information from Invisalign through the website, and, in return, received a number of emails. On the morning of April 29, 2021, Plaintiff unsubscribed to these emails because she was no longer interested in Invisalign.

At 10:35 a.m., very shortly after opting out of the emails, Plaintiff received a text message from Invisalign inviting her to visit an Invisalign provider. Plaintiff opted out of further text message communication by replying "STOP." At around 11:15 a.m., Plaintiff received a phone call from Invisalign. On the other end of the line, an employee introduced the company and tried to book Plaintiff with an Invisalign provider. Plaintiff told this employee that she had already tried to opt out of further communications by text and email. This appears to be the last time Invisalign contacted Plaintiff.

Based on these two post-opt-out communications, Plaintiff alleges that Invisalign has a policy of contacting consumers who opt out of communications with Invisalign in a last-ditch effort to market Invisalign. Plaintiff further alleges that her injuries include annoyance, invasion of privacy, disturbances in "the use and enjoyment of her phone," and some (presumably negligible) wear and tear on the phone's hardware and memory.

## 2. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more

than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (internal citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (internal citations and quotations omitted).

**3.   ANALYSIS**

**3.1   Overview**

Title 47 C.F.R. § 64.1200(d) requires businesses who engage in telemarketing to maintain a do-not-call list for people who request not to be called for telemarketing purposes. The regulations include a set of minimum requirements for such businesses, including that the business "must record the request [to opt out of telemarketing calls] and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made." *Id.* § 64.1200(d)(3). If a person makes a do-not-call request, the business must "honor" that request "within a reasonable time from the date such request is made," but, in any event, no later than "thirty days from the date of such request." *Id.*

**3.2   Private Right of Action for § 64.1200(d) violations**

The TCPA confers standing for a private right of action upon anyone who receives more than one phone call within a twelve-month period by a business that violates any of the enabling regulations. 47 U.S.C. § 227(c)(5). There is a minor split in authority as to whether § 64.1200(d) arises under § 227(c), and thus may be prosecuted by private action, or under § 227(d),

which prescribes technical and procedural standards for automatic dialing systems, fax machines, and artificial or prerecorded systems, but does not support a private action. *Compare Bilek v. Nat'l Congress of Employers, Inc.*, 470 F. Supp. 3d 857, 862–63 (N.D. Ill. 2020) *with Wilson v. PL Phase One Operations L.P.*, No. DKC 18-3285, 2019 WL 4735483, at *6 (D. Md. Sept. 27, 2019).

Although the Seventh Circuit has yet to weigh in on the issue, district courts in this circuit, as well as the Sixth and Eleventh Circuits, recognize a private right of action arising from violations of Section 64.1200(d). *Sorsby v. TruGreen Ltd. P'ship*, No. 20-cv-2601, 2020 WL 7641288, *5 (N.D. Ill. Dec. 23, 2020). "Taken as a whole, section 64.1200(d) implements section 227(c)'s command to protect the privacy rights of telephone subscribers to avoid receiving telephone solicitations to which they object." *Bilek*, 470 F. Supp. 3d at 862–63. Notably, § 227(d)(3) is "limited to artificial or prerecorded voice systems, whereas section 64.1200(d) applies to all telemarketing calls." *Id.* at 863. Thus, because § 64.1200(d) reflects the concerns embraced by section 227(c)—i.e., to protect consumers from phone solicitations to which they have already objected—it is reasonable to conclude that § 64.1200(d) was promulgated pursuant to § 227(c) and permits a private right of action for violations.

### 3.3 TCPA Applies to Align's Communication with Plaintiff

The TCPA's regulations define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). Courts consider "the purpose of the calls" when evaluating their telemarketing character. *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015) (elaborating that telemarketing "occurs when the context of a call indicates that it was

Page 4 of 9
Case 2:21-cv-00631-JPS   Filed 05/16/22   Page 4 of 9   Document 28

initiated and transmitted to a person for the purpose of promoting property, goods, or services").

Plaintiff alleges that Align called her to encourage her to meet with an Invisalign provider—i.e., in order to facilitate a sale of Invisalign. Unlike a prompt text message that confirms a restaurant reservation or reminds a patron to complete an order, Align's communications sought to initiate a transaction months after Plaintiff first expressed interest—not to confirm or complete it. *C.f. MacKinnon v. Hof's Hut Rests., Inc.*, No. 2:17- CV-01456-JAM-DB, 2017 WL 5754308, at *2 (E.D. Cal. Nov. 28, 2017) (holding that a text message from a restaurant to confirm a reservation is informative and non-telemarketing in nature, even if it included a link to a specials list); *Wick v. Twilio Inc.*, No. C16–00914RSL, 2017 WL 2964855, at *5 (W.D. Wash. July 12, 2017) (concluding that a text message from a website prompting a customer to complete an order that he initiated was not telemarketing). Align's telemarketing purpose is highlighted by the fact that Align does not sell its products or services directly to consumers—rather, it operates through a network of specially-trained orthodontists, including the ones with whom it attempted to schedule an appointment for Plaintiff during the call.[1] Thus, Plaintiff has plausibly alleged that Align's calls were to telemarket Invisalign.

---

[1] The Court takes judicial notice of Align's website, where it explains how potential consumers can obtain Invisalign. *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (quoting Federal Rule of Evidence 201, which permits a court to take judicial notice of facts that are "not subject to reasonable dispute" and which are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

### 3.4 TCPA Applies to Calls Made to Plaintiff's Cell Phone

The TCPA and its enabling regulations also apply to wireless telephone numbers such as Plaintiff's, which were personal use, not associated with any business, and registered on the National Do Not Call Registry. 47 C.F.R. § 64.1200(e) (explaining that the rules in subsections (d) apply to "telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991"); In re Rules & Regs. Implementing the TCPA of 1991, 18 FCC Rcd. 14014, 14038, ¶¶ 33, 36 (July 3, 2003) ("[W]ireless subscribers should not be excluded from the protections of the TCPA, particularly the option to register on a national-do-not-call list. . . .we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'").

Align's arguments that Plaintiff must put forth evidence that proves that her phone qualifies as "residential use" is entirely premature; the single case it cites in support is an order on a motion for summary judgment. *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 655–57 (W.D. Tenn. 2020) (concluding that there was a genuine issue of material fact on the issue of whether the plaintiff's cell phone was a residential use phone). The parties have yet to reach the fact-finding portion of this matter. At this stage, Plaintiff's allegations that her wireless phone is a non-business, personal use phone that is registered on the do-not-call list is sufficient to allege that the phone was residential use. *See* In re Rules & Regs. Implementing the TCPA of 1991, 18 FCC Rcd. at 14038, ¶ 36; *Izor v. Abacuz Data Sys.*, No. 19-CV-01057-HSG, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019).

### 3.5 Plaintiff Sufficiently Alleged that Align Did Not Honor Her Request; the Reasonableness of Align's Efforts to Honor the Do Not Call Request is a Question for the Jury

Align argues that one call within an hour of requesting to be on a do-not-call list does not violate the TCPA as a matter of law. *See Orsatti v. Quicken Loans, Inc.*, No. 215CV09380SVWAGR, 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (referring to § 64.1200(d)(3)'s thirty-day limit to honor do-not-call requests as a "safe harbor provision"); *Mattson v. Quicken Loans, Inc.*, No. 3:18- CV-00989-YY, 2018 WL 5255228, at *3 (D. Or. Oct. 22, 2018) (inferring a "lack of adequate internal procedures" sufficient to sustain a claim under 47 C.F.R. 64.1200(d) where a plaintiff alleged that he was "repeatedly called beyond 30 days after a specific request not to be called"); *but see Delgado v. Emortgage Funding, LLC*, No. 21-CV-11401, 2021 U.S. Dist. LEXIS 196785, at *12–13 (E.D. Mich. Oct. 13, 2021) ("Although § 64.1200(d)(3) states that a thirty-day delay in honoring do not call requests is per se unreasonable, it does not state that any shorter delay is per se reasonable.").[2]

Plaintiff does not contend that Align lacks appropriate protocol—rather, it contends that Align's protocol does not "honor" a subscriber's

---

[2] Align cites to *Charavat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) because that case noted that "the regulations do not specifically proscribe actually calling an individual after the individual has requested placement on a do-not-call list." This phrasing is somewhat parsimonious—the regulations do not "specifically proscribe" making additional calls, but they do require companies to stop calling individuals within a reasonable time of the do-not-call request, and they create a private right of action for violations of that regulation. 47 C.F.R. § 64.1200(d)(3). Similarly, the regulations may not "specifically proscribe failing to record an individual's request to be placed on a do-not-call list," *Charavat*, 781 F. Supp. 2d at 592, but they unequivocally state that a business "*must* record the request and place the subscriber's name . . . on the do-not-call list at the time the request is made," 47 C.F.R. 64.1200(d)(3).

"do-not-call request" because its internal protocol requires a phone call immediately after a person asks to be placed on a do-not-call list. *See* 47 C.F.R. § 64.1200(d)(3). In support of this claim, Plaintiff alleges that she initially requested information about Align and received it via email. After four months, she unsubscribed from receiving such information, and promptly received a text message doing the exact opposite of what she requested. When she formally requested to be placed on a do-not-call list, she received a phone call. This escalation in contact, seemingly in direct response to Plaintiff's requests to *stop* contact, plausibly indicates that Align violated the TCPA's regulations by failing to honor Plaintiff's do not-call requests within a reasonable amount of time. *See Nece v. Quicken Loans, Inc.*, No. 8:16-cv-2605-T-23CPT, 2018 WL 1326885, at *7 (M.D. Fla. Mar. 15, 2018) (concluding that there was a genuine dispute of material fact as to whether a business honored a plaintiff's do-not-call request in a reasonable amount of time, and the reasonableness of the business's response was for the jury to decide). Indeed, if Align's system was such that it could easily and immediately remove a person from a call list, then perhaps a jury would find that it was unreasonable to call that person within an hour of their do-not-call request. In any case, it is an issue for the fact-finding stage of this matter.

4.  **CONCLUSION**

For the reasons explained above, Align's motion to dismiss is denied. Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss, ECF No. 16, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 16th day of May, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge